UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

DONNA FIKE,                                            :
        Plaintiff,                                     :
                                                                :
        v.                                                    :   No. 5:23-cv-2981
                                                                :
GLOBAL PHARMA HEALTHCARE        :
PRIVATE, LTD; EZRICARE, LLC;          :
AMAZON.COM, INC.; and EZRIRX, LLC; :
        Defendant.                                    :
_____

**O P I N I O N**
**Defendant Amazon's Motion to Dismiss, ECF No. 22 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                                                          July 18, 2024
**United States District Judge**

## I.     INTRODUCTION

      This case is about eye drops that were contaminated with a virulent type of bacteria. The eye drops were manufactured and marketed by Defendant Global Pharma Healthcare Private, Ltd., EzriCare, LLC, and EzriRx LLC. Defendant Amazon.com, Inc. sold them to Plaintiff Donna Fike. Her eye became infected from the drops, and eventually had to be removed. She sued Global Pharma Healthcare Private, EzriCare, EzriRx, and Amazon for strict products liability, failure to warn, negligence, negligent/reckless misrepresentation, breach of express warranty, breach of implied warranty of merchantability, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), negligent infliction of emotional distress, and punitive damages. Amazon has moved to dismiss the counts for strict liability, negligence, negligent/reckless misrepresentation, breach of express warranty, violation of the UTPCPL, and punitive damages. For the reasons set forth below, the motion is granted in part and denied in part.

1

**II.     BACKGROUND**

The Amended Complaint avers the following facts: Fike purchased artificial tears made and marketed by Global Pharma Healthcare Private, EzriCare, and EzriRx on May 16, July 23, and December 10 of 2022.  *See* Am. Compl. ¶ 32, ECF No. 19.  Each time she bought the product from Amazon. *Id.*

The Center for Disease Control ("CDC") began investigating EzriCare's artificial tears in May 2022 after reports of eye infections caused by the Pseudomonas Aeruginosa bacteria.  *Id.* at ¶ 22.  In late January of 2023, the CDC informed EzriCare that it was investigating its eye drops. *Id.* at ¶ 27.  On February 1, 2023, Global Pharma Healthcare Private voluntarily recalled the EzriCare artificial tears, and the next day the FDA issued a statement warning consumers not to purchase EzriCare artificial tears.  *Id.* at ¶¶ 29, 30.

During this time, Donna Fike was using the artificial tears.  By the end of January, 2023, her left eye was infected with the Pseudomonas Aeruginosa bacteria.  *Id.* at ¶ 40.  On February 5, 2023, it was determined that antibiotics would not help the infection, and Fike's left eye was surgically removed.  *Id.* at ¶ 46.

Fike filed her first complaint on August 3, 2023, against Global Pharma Healthcare Private, EzriCare, EzriRx, and Amazon.  *See* ECF No. 1. On September 14, 2023, Amazon filed a motion to dismiss.  *See* ECF No. 12.  Fike filed an amended complaint on September 28, 2023. *See* Am. Compl., ECF No. 19.  The Amended Complaint sets forth the following counts, each against all Defendants:

> Count I-  Strict Products Liability
> Count II-  Strict Products Liability-Failure to Warn
> Count III-  Negligence
> Count IV- Negligent/Reckless Misrepresentation
> Count V- Breach of Express Warranty
> Count VI- Breach of Implied Warranty of Merchantability
> Count VII- UTPCPL

>Count VIII-  Negligent Infliction of Emotional Distress
>Count IX-  Punitive Damages

Amazon filed a Motion to Dismiss the Amended Complaint on October 12, 2023.  *See* Mot., ECF No. 22.  Amazon argues: (1) the Amended Complaint should be dismissed as to Amazon because it lacks specificity and is an impermissible "shotgun pleading" in violation of Rule 8(a)(2) and Third Circuit precedent; (2) Counts I and III should be dismissed as to Amazon to the extent those claims are premised on a post-sale duty to recall because Pennsylvania law does not recognize such a duty; (3) Count IV should be dismissed as to Amazon because it is not supported by any duty and because Fike does not adequately plead that claim under Pennsylvania law and the heightened standard required under Rule 9(b); (4) Count V should be dismissed as to Amazon because Fike fails to adequately plead that claim under Pennsylvania law; (5) Count VII should be dismissed as to Amazon because the UTPCPL does not permit claims relating to personal injury; and (6) Count IX should be dismissed as to Amazon because Pennsylvania law does not recognize punitive damages as an independent cause of action and Fike does not otherwise plead facts sufficient to warrant the imposition of punitive damages.[1]  *See id.*  Fike responded on October 26, 2023, and Amazon replied November 2, 2023.[2]  *See* ECF Nos. 27, 29.

---

[1] The second, fifth, and sixth arguments were also presented in Amazon's motion to dismiss the first complaint.  *See* ECF No. 12.

[2] Defendants EzriCare and EzriRx have also filed motions to dismiss.  *See* ECF Nos. 23-24. *See also* ECF Nos. 31-32.  Fike filed briefs in opposition to the motions.  *See* ECF Nos. 25-26.  Thereafter, Fike filed a motion pursuant to Federal Rule of Civil Procedure 41(a)(2) to voluntarily dismiss EzriCare and EzriRx.  *See* ECF Nos. 34.  Amazon opposes voluntary dismissal stating, *inter alia*, that Fike provides no basis for her belief that these Defendants are insolvent and that it intends to file crossclaims against EzriCare and EzriRx if its Motion to Dismiss is denied.  *See* ECF No. 35.  Because an answer to the Amended Complaint has not been filed, Fike does not need permission of the Court to voluntarily dismiss its claims against EzriCare and EzriRx.  *See* Fed. R. Civ. P. 41(a)(1)(A)(i) ("[T]he plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment.").  Accordingly, this Court is not inclined to deny Fike's request, especially at this early stage of the proceedings.  However, to eliminate any unnecessary expense and added delay by requiring Amazon to serve any crossclaim on EzriCare

## III. LEGAL STANDARDS

### A. Motion to Dismiss, Rule 12(b)(6) - Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

and EzriRx, these Defendants will not be dismissed until after Amazon has filed an Answer to the Amended Complaint with any crossclaims. A decision on the motions to dismiss filed by Fike, EzriCare, and EzriRx is therefore deferred.

B.     **Rule 8 and Shotgun Pleadings - Review of Applicable Law**

Rule 8 of the Federal Rules of Civil Procedure provides: a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief [because] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 555 n.3). "Complaints that violate Rule 8 are often referred to as 'shotgun pleadings.'" *Longo v. Trostle*, No. 3:22-cv-1199, 2024 U.S. Dist. LEXIS 10036, at *7-8 (M.D. Pa. Jan. 17, 2024) (citing *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (considering whether the complaint complied with Federal Rule of Civil Procedure 8(a)(2) before undertaking an analysis of the claims under Rule 12(b)(6))). The Eleventh Circuit Court of Appeals has addressed shotgun pleadings in detail, "[a]s a result, district courts within the Third Circuit often cite to the Eleventh Circuit for this law." *Bartol*, 251 F. Supp. 3d at 859 n.3 (collecting cases). The Eleventh Circuit identified four categories of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts;" (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief;" and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which

each claim rests."). "Ordinarily, a complaint should only be dismissed as a shotgun pleading if it is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Brown v. Nicklow*, No. 1:22-CV-293, 2023 U.S. Dist. LEXIS 18965, at *6-7 (M.D. Pa. Feb. 3, 2023) (internal quotations omitted).

### C.   Negligent/Reckless Misrepresentation - Review of Applicable Law

Section 310 of the Restatement of Torts provides:

> [a]n actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by . . . a third person in reliance upon the truth of the representation, if the actor (a) intends his statement to induce or should realize that it is likely to induce action by . . . a third person, which involves an unreasonable risk of harm to the other, and (b) knows (i) that the statement is false, or (ii) that he has not the knowledge which he professes.

Restatement (Second) of Torts § 310 (1965). Fraudulent misrepresentation claims must satisfy the heightened pleading requirements in Rule 9. *See McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 832 (E.D. Pa. 2016). Misrepresentation claims may be tantamount to failure-to-warn claims. See *Runner v. C.R. Bard*, 108 F. Supp. 3d 261, 268 (E.D. Pa. 2015) (dismissing the plaintiff's misrepresentation and fraudulent concealment claims as barred by Pennsylvania law, which provides that negligence is the sole theory to recover based on the failure to warn);[3] *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529 (E.D. Pa. 2021) (concluding the plaintiff's

---

[3]   The *Runner* court identified the misrepresentation claims as alleging the defendant:
   [M]isrepresented the safety of its [p]roduct and fraudulently, intentionally, recklessly or negligently concealed material adverse information regarding the [product's] safety. . . Made false, misleading, or negligent statements and omissions about the [product's] safety. . . .
   Minimiz[ed] the risks associated with continuing to use these [p]roducts. . . and actively concealed adverse information at a time when [they] knew, or should have known. . . that the [p]roducts had defects, dangers, and characteristics that were other than what was represented to the FDA[.]
*Runner*, 108 F. Supp. at 268-69.

allegations that the defendants knew their misrepresentations about the medical device were false and fraudulent regarding the dangers and risks associated with use of product did not take the fraud claims beyond the scope of failure to warn of the alleged risks of the defendants' product); *Drumheller v. Johnson & Johnson*, No. 20-6535, 2021 WL 1853407 (E.D. Pa. May 10, 2021) (dismissing the fraud claims based on the defendant's concealment of information regarding the dangers of pelvic mesh and misrepresentation about the product's safety because they sounded in failure-to-warn).

> D. **Breach of Express Warranty - Review of Applicable Law**

Under Pennsylvania law, because an express warranty is "specifically negotiated, . . . the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them." *Goodman v. PPG Indus.*, 849 A.2d 1239, 1243 (Pa. Super. 2004). Express warranties are created in the following ways:

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

13 Pa. C.S.A. § 2313(a). The seller need not use formal words such as "warrant" or "guarantee," nor need the seller have a specific intention to make a warranty. *See* 13 Pa. C.S.A. § 2313(b). However, "an affirmation merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty." *See id.* "To plausibly plead an express warranty claim, some level of meaningful detail is required." *McGrain*, 551 F. Supp. 3d at 543. "If a manufacturer extends to the public an express warranty that his product is harmless and thereafter a purchaser suffers personal injury as a result of its breach, the manufacturer cannot disclaim liability on the ground that there was no

reliance on the warranty." *Pritchard v. Liggett & Myers Tobacco Co.*, 350 F.2d 479, 484 (3d Cir. 1965). *Pritchard* stands only for the position that an injured purchaser need not prove reliance. *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567-68 (3d Cir. 1990). The injured purchaser must nevertheless establish that "she read, heard, saw or knew of the advertisement containing the affirmation of fact or promise" because only after "the buyer has become aware of the affirmation of fact or promise, [are] the statements . . . presumed to be part of the 'basis of the bargain.'" *See id.*

### E. Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") - Review of Applicable Law

The UTPCPL provides a private cause of action to allow,

> [a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, [to] bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 Pa. S.A. § 201-9.2(a). The UTPCPL's causation requirement "demand[s] a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm." *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008) (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) (explaining that the UTPCPL requires a plaintiff to allege that he purchased the product because he heard and believed the defendant's false advertisement)).

### F. Punitive damages - Review of Applicable Law

There is no independent cause of action for punitive damages under Pennsylvania law. *See Tippett v. Ameriprise Ins. Co.*, No. 14-4710, 2015 U.S. Dist. LEXIS 37513, at *9-10 (E.D. Pa. Mar. 25, 2015) (dismissing the punitive damages count "because no independent cause of action for punitive damages exists under Pennsylvania law"). However, courts have taken

different approaches on how to handle such claims. *See Feinberg v. Am. Express Co.*, No. 11-5434, 2011 U.S. Dist. LEXIS 116856, *4 n.1 (E.D. Pa. Oct. 7, 2011) (dismissing the plaintiff's independent punitive damages claim in Count Two and allowing the plaintiff to amend Count One so as to include a claim for punitive damages); *Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 451 (W.D. Pa. 2010) (concluding that Plaintiffs "improperly pleaded punitive damages as a separate count from their underlying causes of action," dismissing the Count, but declining to "decide whether or not Plaintiffs may recover punitive damages under any of their remaining causes of action"); *Jefferies v. Ameriquest Mortg. Co.*, 543 F. Supp. 2d 368, 390 (E.D. Pa. 2008) (finding that the plaintiff's claim for punitive damages does not contain an independent cause of action and granting the defendant's motion for summary judgment on this count, but also holding that such dismissal does not affect the plaintiff's separate requests for relief in the form of punitive damages in her other causes of action); *Ritzel v. Pa. SPCA*, No. 04-2757, 2005 U.S. Dist. LEXIS 1904, at *17 (E.D. Pa. Feb. 9, 2005) (denying the motion to dismiss the plaintiff's claim for punitive damages because it "clearly incorporates by reference paragraphs 1-65 of the Complaint").

**IV.   ANALYSIS**

    **A.   The request to dismiss the Amended Complaint in its entirety for failure to comply with Rule 8 is denied.**

Before addressing the Motion to Dismiss under the Rule 12(b)(6) standard, the Court considers whether Fike's Amended Complaint should be dismissed as a shotgun pleading. Although it has some of the hallmarks of a shotgun pleading, it is not so vague or ambiguous that it fails to give Amazon notice of the claims against it. *See Longo*, 2024 U.S. Dist. LEXIS 10036, at *7-8 (finding that the amended complaint had some of the characteristics of a shotgun pleading, but refusing to dismiss on this ground and instead considering whether it stated a

claim). The Amended Complaint clearly separates the claims into nine different counts, all of which are brought against all four Defendants, none of which rely solely on the allegations in the previous paragraphs. *Accord Bartol*, 251 F. Supp. 3d at 859-60 (dismissing the complaint as a shotgun pleading where it was fifty-four pages long, brought thirteen different counts against any combination of seven distinct defendants, many of whom were not present during the events at issue in the case, and it was not clear against whom each claim was brought). There are factual allegations specific to each claim under the related count and in the Amended Complaint as a whole such that Defendants are generally put on notice of their alleged wrongdoing. *See Abira Med. Labs., LLC v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, No. 24-CV-759, 2024 U.S. Dist. LEXIS 87301, at *9 n.3 (E.D. Pa. May 15, 2024) (rejecting the defendant's argument that the complaint should be dismissed as a shotgun pleading because it was "easily separable into its components for analysis"). However, this Court is concerned that the Amended Complaint includes many group pleadings (repeatedly referring to "Defendants" conduct) that fail to identify which statements/conduct/omissions are attributable to which Defendant. Nevertheless, Amazon's role is distinct from that of the other three Defendants and this Court will analyze the claims under Rule 12(b)(6). The request to dismiss the Amended Complaint as a shotgun pleading is denied.[4]

---

[4] To the extent Amazon suggests that the Amended Complaint, by referring to other misrepresentations or defects that may be identified during discovery, impermissibly allows Fike to expand the scope of her allegations without adequate notice to Amazon, such alleged defective paragraphs do not violate Rule 8 provided there are specific factual allegations to state a claim for relief. Moreover, of the seven purportedly problematic paragraphs cited by Amazon, only one pertains to the misrepresentation claim that requires a heightened level of specificity and that claim is dismissed for the reasons set forth below. This Court cannot conclude at this time whether the other paragraphs impermissibly expand the scope of the pleadings because there is insufficient information from which to determine whether such additional facts would state a new claim or merely offer support for a current claim. Notably too, Fike purchased the Artificial Tears as late as December 10, 2022, and lost her eye on February 5, 2023. She therefore likely has time remaining on the statute of limitations to bring additional claims, thereby reducing any

**B.     To the extent the claims for Strict Products Liability and Negligence against Amazon are premised on a post-sale duty to recall, they are dismissed in limited part and the paragraphs related to a post-sale duty to recall are stricken as to Amazon only.**

Amazon argues that to the extent Counts I and III (strict products liability and negligence) are premised on a post-sale duty to recall they should be dismissed because Pennsylvania law does not recognize such a duty.  *See* Mot. 6-7.  Amazon cites to paragraphs 55(r) and 71(q) of the Amended Complaint as containing such allegations and, further, asserts that the Court should strike paragraph 75(c), which references "delay[ ] in issue of post-sale measures or additional warnings," pursuant to Rule 12(f) as a redundant, immaterial, impertinent, or scandalous matter.  *See id.* n.1.  Fike responds that she not pursuing a claim against Amazon.com for failure to recall the product post-sale, and agrees to strike subparagraphs 55(r) and 71(q) with respect to Amazon only.  *See* Opp. 8.

To the extent the claims in Counts I and III are premised on a post-sale duty to recall they are dismissed in limited part as to Amazon.[5]  Based upon the agreement of the parties, paragraphs 55(r), 71(q), and 75(c)[6] of the Amended Complaint are stricken as to Amazon.  *See McKnight v. Amazon.com Inc.*, No. 23-1449, 2024 U.S. Dist. LEXIS 86501, at *17 (E.D. Pa. May 14, 2024) (striking the allegation about Amazon "continuing to sell and market" the product because there is no duty to recall under Pennsylvania law).

---

risk that Amazon may be prejudiced or not have notice of all alleged claims.  To the extent Fike wants to rely on other specific misrepresentations to support additional claims, Fike may timely seek to amend during the course of these proceedings, at which time a decision will be made on whether an amendment should be permitted.

[5]     Counts I and III may otherwise proceed because post-sale duty to recall is only a part of these claims and Amazon has not moved to dismiss the Counts in their entirety.

[6]     Although Fike only mentions paragraphs 55(r) and 71(q), it appears that Fike's failure to include paragraph 75(c) was merely an oversight, perhaps because it was mentioned only in a footnote in the Motion to Dismiss.  For the reasons Fike has agreed to strike paragraphs 55(r) and 71(q), paragraph 75(c) will also be stricken as to Amazon.

### C.     The Negligent/Reckless Misrepresentation claim is dismissed as to Amazon.

Duty is necessary for any action in either reckless or negligent misrepresentation, regardless of whether it is brought under the Restatement of Torts or common law. *See Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) ("Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another.") "To determine whether to impose a duty, Pennsylvania law looks to a five-factor test: '(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.'" *Zaftr Inc. v. Lawrence*, No. 21-2177, 2023 WL 349256, at *29 (E.D. Pa. Jan. 20, 2023) (quoting *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 281 (Pa. 2005)). The majority of these factors weigh in favor of Amazon.

First, the parties in this litigation are doing business over the Internet, with Amazon acting merely as the middleman between Fike and EzriCare. The Amended Complaint does not aver that Fike's interactions with Amazon were anything more than arm's length business deals. Am. Compl. ¶ 32. Other Circuits have held that shippers or distributors of products do not owe a duty of inspection or investigation into products that they ship. *See Crockett v. Uniroyal, Inc.*, 772 F.2d 1524, 1531 (11th Cir. 1985) (holding that "a carrier… will not, and should not, be required to examine information about the content of the shipment entrusted to him and warn the ultimate consignee of that shipment of any potential dangers arising from the nature of the cargo"); *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 142 (4th Cir. 2019) ("Although Amazon's services were extensive in facilitating the sale, they are no more meaningful to the analysis than are the services provided by UPS Ground, which delivered the headlamp to Cao. Neither Amazon nor UPS Ground was a seller incurring liability for the defective product."); *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 835 F. App'x 213, 216–

17 (9th Cir. 2020) ("Absent a duty to defendant and a breach of that duty, a negligence action fails. Here, Amazon did not owe a special duty to the injured party because it was not the seller") (internal citations omitted)

Second, social utility also favors Amazon. The shipping of goods is an important part of any economy. Although this individual Plaintiff was injured, Amazon's services provide products to large numbers of people worldwide, including groceries and healthcare products. *See* Amazon, *Amazon.com Announces First Quarter Results*, Amazon (April 30, 2024), https://ir.aboutamazon.com/news-release/news-release-details/2024/Amazon.com-Announces-First-Quarter-Results-68b9258cd/.

Third, there was little foreseeability of harm, which weighs in Amazon's favor. Although the Amended Complaint alleges Amazon received reports of symptoms consistent with infection from the eye drops, it does so "on information and belief," and does not specify which infection symptoms the reports contained. Am. Compl. ¶ 38. Infections can have many symptoms, and not all of them are readily understood as symptoms of infection. Even Fike's symptoms listed in the Amended Complaint, "eye discharge, burning eyes, eye redness, and tearing," can be caused by other things, including issues such as dry eye, which many people take artificial tears to alleviate. *Id.* at ¶ 40. Furthermore, the Amended Complaint, alleging only that "prior to Donna Fike's purchase of EzriCare Artificial Tears, complaints were made by Amazon.com users to Amazon or on Amazon's website," fails to specify when such complaints were made. *Id.* ¶ 38.  Fike purchased Artificial Tears "on at least three (3) occasions" over seven months in 2022, but it was not until a month *after* Fike made her last purchase that the CDC informed EzriCare that it was investigating its eye drops. *Id.* at ¶ 22.  Accordingly, the risk of bacterial contamination of the eyedrops was not so foreseeable, if at all, as to impose a duty on Amazon.

Fourth, imposing a duty on Amazon could hamper its ability to distribute and ship products, which is an extremely socially useful service. Amazon has products from numerous third-party sellers on its website. To investigate every single product would be an incredibly expensive and time-consuming burden, if even possible, which would decrease Amazon's ability to participate in the global marketplace.

Fifth, public interest in the solution is the most nebulous factor, but it does weigh more in favor of Fike than Amazon. There is public interest in protecting people from injury and loss. Imposing a duty on shippers to inspect their shipments and ensure the contents will not harm consumers could provide an extra line of defense for the purchaser.

Overall, the majority of the factors in the five-factor test favor not imposing a duty on Amazon. Amazon makes many important contributions to the economy, and the burden of imposing this particular duty would be high, decreasing Amazon's ability to continue with its socially beneficial business. In addition, the harm in the instant case does not seem to have been foreseeable, which further exemplifies how difficult the imposition of this burden would be on Amazon. Although this is a tragic case, which illustrates the multitude of harms that can happen to consumers, the solution is not to impose a duty of inspection on Amazon.

As reckless or negligent misrepresentation, whether under the Restatement or common law, requires a duty to have been breached, there can be no misrepresentation claim against Amazon in this case. Count IV is dismissed with prejudice[7] against Amazon.

---

[7] Leave to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that leave to amend "must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment"). Moreover, Fike, through counsel, previously amended her complaint after receipt of a motion to dismiss for the same reasons discussed herein. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (holding that leave to amend may be denied "based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment").

**D.     The Breach of Express Warranty claim is dismissed as to Amazon.**

Consistently, courts have held that there needs to be more than just a promise that a product is safe and effective to constitute an express warranty, especially in the case of medical products and devices. *See McGrain*, 551 F. Supp. 3d at 543–44; *Sabol v. Ford Motor Co.*, No. 14-6654, 2015 WL 4378504, at *4 (E.D. Pa. July 16, 2015) (The terms "'safe' and 'reliable'— are not measurable and amount to puffery. These statements are simply subjective opinions and do not give rise to liability for breach of express warranty."); *McGrain*, 551 F. Supp. 3d at 544 (finding that the complaint "does not provide any 'express' language used in the purported express warranty at all" when it averred that the product had been advertised as "safe," "effective," and "fit for use"); *Drumheller*, 2021 WL 1853407, at *15 (holding that there was no express warranty where a plaintiff only "paraphrase[d] several alleged express warranties," including that the product was "safe and effective"); *Kester v. Zimmer Holdings, Inc.*, No. 10-00523, 2010 WL 2696467, at *9–10 (W.D. Pa. June 16, 2010) (finding no express warranty where products were said to be "safe").

The only alleged express warranties are that "[a]ll Defendants expressly warranted that its EzriCare Artificial Tears were safe and effective to members of the consuming public" and that "the labeling for the EzriCare Artificial Tears expressly warranted that the use of these artificial tears served to protect the eye from dryness and/or irritation, and that these artificial tears were safe for use in the eye." Am. Compl. ¶¶ 83, 84. Even the latter statements are still only claims that the product was safe and effective, which do not create an express warranty. They are the opinion of the producer of the artificial tears, not any explicit guarantee which then became part of the bargain with Fike.  Terms such as safe or effective are puffery and not an express

warranty. Without an express warranty there cannot be a breach of express warranty. Count V against Amazon is therefore dismissed with prejudice.[8]

### E. The request to dismiss the UTPCPL claim as to Amazon is denied.

The UTPCPL is a remedy for individual consumers who have been wronged by unfair trade practices, so its provisions should be liberally construed to protect consumers. *See Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007). To survive a motion to dismiss, a UTPCPL claim requires: (1) the defendant's unfair practices, (2) an "ascertainable loss" that the defendant's unfair practices caused, and (3) facts which suggest the plaintiff's reliance on the defendant was justifiable. *See Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015).

Although it is a close call, Fike's allegations of Amazon's unfair practices are sufficient to survive a motion to dismiss. Fike claims that Amazon violated the UTPCPL through fraudulent representations as to the safety of the Artificial Tears, the lack of defects, the safety features they possessed, and the geographic origin of the artificial tears. Am. Compl. ¶¶ 103, 104, 105, 106. Courts in the Eastern District are not consistent when holding whether representations that a product is safe or has certain safety features are actionable under the UTPCPL. *Compare First Liberty Ins. Corp. v. Haier US Appliance Sols., Inc.*, No. 23-2268, 2023 WL 5832163, at *6 (E.D. Pa. Sept. 8, 2023) (But it has not identified what those advertisements "convey," when they were made, or the "particular purposes" for which the microwave is supposedly "safe and fit.") *with Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 656–57 (E.D. Pa. 2016) (finding that a UTPCPL claim had been stated where the plaintiff alleged "Defendants represented that J&J Baby Powder had been tested and found to be safe and effective for use in the perineal area" and the plaintiff "was injured by the cumulative and

---

[8] *See* footnote 7 *supra*

indivisible nature of Defendants' conduct"). Fike's Amended Complaint is similar to the complaint in *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452 (E.D. Pa. 2013), in which the plaintiffs contended that a product was marketed as "safe, 'green,' and non-toxic," and that the plaintiffs "would not have purchased SPF had the damaging side effects been disclosed." *Id.* at 461. The court held that this was specific enough to plead a misrepresentation under the UTPCPL. *Id.* Similarly, in this case, Fike avers that Defendants "warranted and represented that its EzriCare Artificial Tears was safe and free of defects in materials and manufacture and that they possessed safety features" and that Fike "would have taken steps to avoid damages by, among other things, not purchasing this product" had she known the truth about the product's geographic origin and lack of safety standards.  *See* Am. Compl. ¶¶ 106, 110. This is sufficient to allege unfair practices by Amazon.

Amazon claims that ascertainable loss cannot include personal injury, but there is evidence in the Amended Complaint of additional losses sufficient to be ascertainable losses under a UTPCPL claim. In *Weinberg v. Legion Athletics, Inc.*, 683 F. Supp. 3d 438 (E.D. Pa. 2023), a man alleged that he fell ill after taking vitamins because they contained a harmful concentration of plant extracts. He suffered an ascertainable loss sufficient for a UTPCPL claim when he averred that "he purchased products that he otherwise would not have had he been given adequate instructions regarding a safe dose." *Id.* at 450. Similarly, Fike alleges that if she had "been adequately warned concerning the likelihood that the EzriCare Artificial Tears were manufactured in India without following necessary product safety standards such that it could cause Pseudomonas Aeruginosa bacteria-related infections and injuries, she would have taken steps to avoid damages by, among other things, not purchasing this product." Am. Compl. ¶ 110. Thus, her ascertainable loss is the same as the plaintiff in *Weinberg* in that she purchased products she would not have, save for the defendants' deceptive conduct.

Fike has also pled sufficient justifiable reliance for this stage of the litigation. Justifiable reliance at the "motion to dismiss stage requires a two-step analysis. First, the Court must extract all factual assertions from the Amended Complaint, viewing such facts in the light most favorable to the Plaintiffs and drawing all reasonable inferences in Plaintiffs' favor." *Walkup*, 147 F. Supp. 3d at 359 (internal quotations omitted). Then, the court must "assess whether these factual allegations, if true, provide plausible support for a legal claim for relief." *Id.* A plaintiff must allege "that he purchased [the product] because he heard and believed [the defendant's] false advertising." *Weinberg*, 777 A.2d at 446. Fike successfully does so, especially if the court makes reasonable inferences, which it is allowed to do at this stage in the pleadings. *See Iqbal*, 556 U.S. at 678. Fike avers that she saw these representations of safety and geographic origin on the "the instructions for use, websites, packaging, and other promotional materials," and then bought the product. Am. Compl. ¶¶ 32, 107, 108. It can be inferred that she would not have bought the product had it not been represented as safe, and indeed Fike admits herself that she would not have bought the product had she known the truth, suggesting safety and geographic origin were part of the reason for her purchase. *Id.* at ¶ 110.

As a result, Fike has successfully stated a claim under the UTPCPL because she has alleged prohibited conduct by Defendants, ascertainable loss relating to that conduct, and reliance on the conduct. Amazon's request to dismiss Count VII is denied.

F. **The claim for punitive damages is dismissed.**

There is no independent cause of action for punitive damages under Pennsylvania law, but courts have allowed dependent claims to proceed. *See Purcell v. Universal Bank*, No. 01-2678, 2003 WL 1962376, at *6 (E.D. Pa. Apr. 28, 2003) ("If all of a plaintiff's independent claims are dismissed and only a dependent claim for punitive damages remains, then by definition, the dependent claim cannot stand… [the] dependent claim for punitive damages shall

stand because the independent claims upon which it rests still remain"). Regardless, Fike does not allege conduct on Amazon's part sufficient to support dependent punitive damages. As Amazon does not have a duty to inspect the packages it ships, and Fike only references comments sent to Amazon "on information and belief," there are not facts to support the idea that Amazon acted recklessly or with the requisite lack of duty to sustain punitive damages against it. The only remaining claims are the UTPCPL, which barely survives dismissal, and those based on negligence, none of which require a showing of deliberate indifference or have alleged conduct sufficiently egregious as to warrant punitive damages. Count IX for punitive damages is dismissed with prejudice as to Amazon.[9]

## V. CONCLUSION

The request to dismiss the Amended Complaint pursuant to Rule 8 is denied because the allegations are not so ambiguous as to fail to give notice to Amazon of the claims against it. To the extent the strict products liability and negligence claims are premised on a post-sale duty to recall they are dismissed in limited part and paragraphs 55(r), 71(q), and 75(c) of the Amended Complaint are stricken as to Amazon. As to Amazon, the misrepresentation claim is dismissed because Amazon had no duty to Fike and the breach of express warranty claim is dismissed because there was no express warranty. Fike has stated a UTPCPL claim against Amazon. The punitive damages count is dismissed as to Amazon because there is no independent claim for damages and Fike has failed to allege facts to support punitive damages from Amazon.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

9       *See* footnote 7 *supra*